**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LIBERTY MUTUAL FIRE INSURANCE COMPANY and LIBERTY INSURANCE CORPORATION** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:19-CV-02748** |
| | § | |
| **COPART OF CONNECTICUT, INC.,** | § | |
| **Defendant.** | § | |

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE UNITED STATES DISRICT JUDGE:

Plaintiffs Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation file this Original Complaint for Declaratory Judgment against Copart of Connecticut, Inc. pursuant to 28 U.S.C. §§ 1332(a)(1) and 2201(a) and would show the Court the following:

## I. PARTIES AND SERVICE

1. Liberty Mutual Fire Insurance Company ("LMFIC") is an insurance company duly organized and existing under the laws of the State of Wisconsin and its principal place of business is Boston, Massachusetts. LMFIC is a citizen of the State of Wisconsin and the Commonwealth of Massachusetts and not the State of Texas, was and is duly qualified to do and transact business in the State of Texas, and executes and delivers insurance policies throughout Texas, including Dallas County, Texas.

2. Liberty Insurance Corporation ("LIC") is an insurance company duly organized and existing under the laws of the State of Illinois and its principal place of business is Boston, Massachusetts. LIC is a citizen of State of Illinois and the Commonwealth of Massachusetts and

not the State of Texas, was and is duly qualified to do and transact business in the State of Texas, and executes and delivers insurance policies throughout Texas, including Dallas County, Texas.

3. Defendant Copart of Connecticut, Inc. ("Copart") is a corporation duly organized and existing under the laws of the State of Connecticut with its principal place of business in Dallas, Texas. Copart may be served with process through its registered agent for service, Corporation Service Company at its registered office at 50 Weston Street, Hartford, Connecticut 06120.

## II.
## JURISDICTION AND VENUE

4. This declaratory judgment suit is filed under the authority of 28 U.S.C. § 2201(a) authorizing declaratory judgment actions in cases of "actual controversy." This suit is within the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because it is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000. Plaintiffs seek a declaration regarding the rights and duties of the parties, if any, under commercial general liability policies, described below, in connection with an underlying suit, described below, filed against Copart, LMFIC and LIC's insured.

5. The amount in controversy includes the cost of defending Copart and/or paying any judgment against Copart in the underlying suit, which exceed the minimum jurisdictional limits of this Court. The limits of all policies at issue are $1 million for each occurrence.

6. Venue is appropriate in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1391(b)-(d), because Copart resides there and is subject there to the Court's personal jurisdiction with respect to this action, and it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

7. All persons having an interest in the outcome of this litigation have been joined as parties and there is no other pending legal action seeking to adjudicate the rights of the parties. An actual controversy of a justiciable nature exists between the Plaintiffs and Copart regarding the parties' rights and duties under the relevant policies in connection with a suit styled *Robert Livingston, et. al. v. Copart of* Connecticut, *Inc.*, Civil Action No.: 2016-CP-32-03547, in the Court of Common Pleas for the 11th Circuit of South Carolina (the "Underlying Suit").

## III.
## BACKGROUND

8. Plaintiffs seek a declaration of its rights and duties, if any, to defend and/or indemnify Defendant in connection with the Underlying Suit. Plaintiffs' duties arise, if at all, from the allegations in the Underlying Suit pursuant to the terms and conditions of the following commercial general liability policies (the "CGL Policies"), issued by LMFIC to Copart, Inc. and naming Defendant Copart as an insured:

TB2-661-0030140-122, effective from 10-1-12 to 10-1-13;
TB2-661-0030140-123, effective from 10-1-13 to 10-1-14;
TB2-661-0030140-124, effective from 10-1-14 to 10-1-15;
TB2-661-0030140-125, effective from 10-1-15 to 10-1-16; and
TB2-661-0030140-126, effective from 10-1-16 to 10-1-17.

These policies are referred to individually by the year of policy inception, and references to specific policy sections in this pleading are to the 2016 CGL Policy. Each CGL Policy provides general liability coverage on form CG 00 01 04 13 (the "CGL Form") except the 2012 CGL Policy which provides such coverage on a substantively similar form, CG 00 01 12 07. A true and correct copy of the 2016 CGL Policy is attached hereto as Exhibit A.

9. Plaintiff LIC also issued the following umbrella liability policies (the "Umbrella Policies") to Copart, Inc. and naming Defendant Copart as an insured:

TH7-661-003140-214, effective from 10-1-14 to 10-1-15;
TH7-661-003140-215, effective from 10-1-15 to 10-1-16; and
TH7-661-003140-216, effective from 10-1-16 to 10-1-17.

The Umbrella Policies provide coverage under form LCU 00 01 11 10 (the "Umbrella Form").

A true and correct copy of the 2016 Umbrella Policy is attached hereto as Exhibit B.

**A. The Underlying Suit Alleges Copart's Activities Have Polluted Plaintiffs' Land and Waterways.**

10. On October 14, 2016 Robert Livingston and others who own land near Copart's automotive salvage facility in Lexington County, South Carolina filed suit against Copart in the Underlying Suit, identified above.

11. The Amended Complaint in the Underlying Suit (the "Complaint"), was filed on December 22, 2016. A copy of the Complaint is attached hereto as Exhibit C. The Complaint specifically alleges the following:

> "Copart operates an automotive salvage facility" in Lexington County, South Carolina, and has been operating it for over 20 years. Plaintiffs own properties to the east and north-east of Copart's. Tom's Creek originates on Copart's property and runs through plaintiffs' properties either as a free-flowing stream or as an impounded stream forming ponds, and the creek also feeds wetlands on plaintiffs' properties. Complaint at 2. Copart stores vehicles in unpaved lots on its property, many of which vehicles "are leaking petroleum and other fluids and materials into the soil." Complaint at 3.

> "In 2013, Copart expanded the area on which it stores vehicles" and, as part of the expansion, "cleared and graded more than 30 acres of land without certain statutorily-related federal, state, and county permits, in particular land disturbance and stormwater permits." *Id*. at 3. In the process, Copart "altered the normal course of stormwater runoff over its property so that it is now improperly managed and discharged onto Plaintiffs' properties." *Id*. "Copart collects and discharges stormwater – laden with sediment and chemical pollutants – in a concentrated form into Tom's Creek." *Id*. After rains, "a sediment plume moves from Copart's property, through Tom's Creek, and into the waterways, wetlands, and ponds on Plaintiffs' properties" and it can take weeks for Plaintiffs' waterways, wetlands, and ponds to return to their pre-rain event appearance. *Id*.

> "Plaintiffs' waterways, wetlands, and ponds have not returned to their condition prior to the land disturbance associated with Copart's land-clearing activities. As

a result of the improperly controlled and unlawfully concentrated stormwater discharge from Copart onto Plaintiffs' properties, Plaintiffs and their properties have been damaged in the following respects:

A. Degradation of physical, chemical, and biological water quality;

B. Accretion of sediment;

C. Increased aquatic vegetation; and

D. Change in fish population."

Ex. C, Complaint at 3-4.

12. The Complaint alleges actual and consequential damages for negligence, negligence per se, nuisance, and trespass, and seeks a permanent injunction "requiring Copart to take action to prevent further damage to Plaintiffs' properties and to repair the existing damage so as to restore the property to its former condition." Ex. C, Complaint at 4-8.

**B. The Pollution Exclusions in the CGL Policies Preclude Coverage for all Claims in the Underlying Suit.**

13. LMFIC is currently defending Copart in the Underlying Suit pursuant to its reservation of rights and seeks, by this action, a declaration that it has a right to withdraw that qualified defense.

14. Section I, Coverage A – Bodily Injury and Property Damage Liability, of the - CGL Policies provides general liability coverage as follows:

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for 'bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to 'bodily injury' and "property damage" only if:

(1) The “bodily injury” or “property damage” is caused by an “occurrence” that takes place in the “coverage territory”:

(2) The “bodily injury” or “property damage” occurs during the policy period; . . .

Ex. A at 18, (CGL Form at 1).

15. The CGL Policy also contains endorsement CG 21 65 12 04, titled “Total Pollution Exclusion with a Building, Heating, Cooling and Dehumidifying Equipment Exception and a Hostile Fire Exception,” (the “pollution exclusion”) which precludes coverage for all pollution-related damage as follows:

f. Pollution

(1) “Bodily Injury” or “property damage” which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

This exclusion does not apply to:

(a) “Bodily injury” if sustained within a building . . . ; or

(b) “Bodily injury” or “property damage” arising out of heat, smoke, or fumes from a “hostile fire” . . . .

* * *

(2) Any loss cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Ex. A at 20-21, (CGL Form at 3-4).

16. The CGL Policy defines the term "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed." Ex. A at 32, (CGL Form at 15).

17. The Complaint alleges facts clearly within the ambit of the pollution exclusion, which is unambiguous as a matter of law. Accordingly, the pollution exclusion in the CGL Policies precludes coverage for all claims set out in the Underlying Suit as a matter of law.

18. Coverage B of the CGL Policies provides coverage for "personal and advertising injury" as follows:

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit' seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion. investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

Ex. A at 23, (CGL Form at 6).

19. The CGL Policies define "personal and advertising injury" as follows:

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Ex. A at 32, (CGL Form at 15).

20. Endorsement LD 24 54 01 12 of the CGL Policy amends the definition of "personal and advertising injury" as follows:

The definition of "personal and advertising injury" is amended to include the following:

h. Negligent trespass arising out of your operations; or

i. Negligent "conversion" arising out of your operations.

"Conversion" means the wrongful use or disposition of property by a person or institution who is in lawful possession of it, though not having title thereto. "Conversion" does not include spoliation, disposition, or destruction of evidence.

Ex. A at 68, (End. LD 24 54 01 12 at 1).

21. Coverage B, like Coverage A, contains a pollution exclusion which precludes coverage as follows:

m. Pollution

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Ex. A at 24, (CGL Form at 7).

22. Exclusion n under Coverage B also applies to "pollutants", and precludes coverage for:

n. Pollution-related

Any loss cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

*Id.* The Policy definition of the term "pollutants" is set out above in connection with Coverage A.

23. The Underlying Suit alleges facts showing all injuries suffered by plaintiffs "aris[e] out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" Accordingly, the pollution exclusion applies to preclude coverage under Coverage B.

24. Because the pollution exclusions in the CGL Policy unambiguously preclude coverage for the claims in the Underlying Suit, LMFIC has no duty to defend or indemnify under the terms of the CGL Policies.

**C. The Pollution Exclusions in the Umbrella Policies Preclude Coverage for all Claims in the Underlying Suit.**

25. The insuring agreement of the Umbrella Policies, as amended by endorsement LMU 24 16 07 11, provides excess liability coverage as follows:

> 1. Insuring Agreement
>
> a. We will pay those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of:
>
> (1) "Bodily injury";
>
> (2) "Property damage"; or
>
> (3) "Personal and advertising injury";
>
> to which this insurance applies. …
>
> b. We will have the right and duty to defend any "suit" seeking damages covered by this insurance, by counsel of our choice, when:
>
> (1) The total applicable limits of "underlying insurance" have been exhausted by payment of judgments or settlements; or
>
> (2) The damages sought because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies would not be covered by "underlying insurance" or "other insurance".
>
> However, we have no duty to defend any "suit" against the insured if any other insurer has a duty to defend all of that "suit". …

* * *

c. This insurance applies only if:

(1) The "bodily injury" or "property damage" occurs during the policy period or the "personal and advertising injury" is caused by an offense arising out of your business during the policy period;

(2) The "bodily injury", "property damage" or "personal and advertising injury" is caused by an "occurrence" that takes place anywhere in the world. …

Ex. B at 53, (Umbrella Form at 1) and Ex. B at 30, (Endorsement LMU 24 16 07 11 at 1).

26. The Umbrella Policies define the term “underlying insurance” as “any policies of insurance or self-insurance listed in the Declarations under the Schedule of ‘underlying insurance.’” Ex. B at 81, (Umbrella Form at 29). The Schedule, set out in Item 6 of the declarations of each Umbrella Policy, lists the Liberty CGL Policies as the “underlying insurance.” Ex. B at 2, (Declarations at 2). The total applicable limits of “underlying insurance” have not been exhausted by payment of judgments or settlements under subsection 1(b)(1), above.

27. Accordingly, pursuant to subsection 1(b)(2), the Umbrella Policies require LIC to defend Copart only if the CGL Policies do not provide coverage and the Umbrella Policies do provide coverage. Because the pollution exclusions in the Umbrella Polices unambiguously preclude coverage for the claims in the Underlying Suit, the Umbrella Policies also do not provide coverage for the claims in the Underlying Suit and LIC has no duty to defend or indemnify under the terms of the Umbrella Policies.

## V.
## CAUSES OF ACTION

**A. Declaratory Judgment.**

28. Plaintiffs incorporate by reference the allegations set forth above. This action is necessary to determine Plaintiffs' duties, if any, to defend and/or indemnify the Defendant herein under the CGL Policies or the Umbrella Policies in connection with the Underlying Suit. This matter presents an actual controversy of a justiciable nature between the parties with respect to the matters set forth in this Complaint.

29. The facts and claims asserted against Copart in the Underlying Suit are not within the scope of coverage of the CGL Policies or the Umbrella Policies.

30. The pleadings in the Underlying Suit plainly allege facts and claims within the scope of the pollution exclusions of the CGL Policies and Umbrella Policies. The pollution exclusions of the CGL Policies and Umbrella Policies are unambiguous as applied to the allegations in the Underlying Suit.

31. For these reasons, Plaintiffs have no duty to defend or indemnify Copart or any other person in connection with the claims asserted in the Underlying Suit and therefore have no duty to pay any portion of the defense costs incurred or paid by any person in connection with the Underlying Suit.

32. Further, for the same reasons, Plaintiffs have not breached any obligation under the policies described herein by any denial of the duty to defend or pay defense costs in the Underlying Suit on behalf of Copart or any other person;

33. Further, for the same reasons LMFIC has a right to withdraw any defense it has offered or provided to Copart or any other person in connection with the Underlying Suit.

34. Finally, Plaintiffs are entitled to recover the costs and attorneys' fees incurred in bringing this action pursuant to 28 U.S.C. § 2202 and Federal Rule of Procedure 54(d).

## VI.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs prays that Defendant be cited to appear and answer herein, and that on final hearing Liberty have the following judgment:

1. A declaration that Plaintiffs LMFIC and LIC have no duty to defend or indemnify Copart or any other person in connection with the claims asserted in the Underlying Suit and therefore have no duty to pay any portion of the defense costs incurred or paid by any person in connection with the Underlying Suit;

2. A declaration that Plaintiffs LMFIC and LIC have not breached any obligation under the policies described herein by any denial of the duty to defend or pay defense costs in the Underlying Suit on behalf of Copart or any other person;

3. A declaration that LMFIC has a right to withdraw any defense it has offered or provided to Copart or any other person in connection with the Underlying Suit;

4. An award of costs and attorneys' fees incurred in bringing this action pursuant to 28 U.S.C. § 2202 and Federal Rule of Procedure 54(d); and

6. An award of such other and further relief to which Plaintiffs may be entitled.

Respectfully submitted,

**HANNA & PLAUT, L.L.P.**
211 East Seventh Street, Suite 600
Austin, Texas 78701
Telephone: (512) 472-7700
Facsimile: (512) 472-0205

By: *__/s/ Catherine L. Hanna__*
Catherine L. Hanna
State Bar No. 08918280
Email: channa@hannaplaut.com

**ATTORNEYS FOR PLAINTIFFS LIBERTY MUTUAL FIRE INSURANCE COMPANY and LIBERTY INSURANCE CORPORATION**