IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY AND LIBERTY INSURANCE CORPORATION, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-cv-2748-E |
| COPART OF CONNECTICUT, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court in this insurance coverage case are Plaintiffs' Motion for Summary Judgment (Doc. 24) and Defendant's Motion for Partial Summary Judgment (Doc. 30). After careful review of the parties' motions, responses, and summary judgment evidence and the record, the Court grants Plaintiffs' motion and denies Defendant's motion for reasons that follow.

### Background

In their Original Complaint for Declaratory Judgment, Plaintiffs Liberty Mutual Fire Insurance Company (LMFIC) and Liberty Insurance Corporation (LIC) (collectively "Liberty Mutual") seek a declaration of their rights and duties to defend or indemnify Defendant Copart of Connecticut, Inc. under insurance policies in connection with a lawsuit pending in South Carolina (the Underlying Suit). Copart operates a "machine salvage junkyard and vehicle wash facilities" in Lexington County, South Carolina. For the time period of October 2012 to October 2017, LMFIC issued Copart yearly commercial general liability policies (CGL policies). In addition, LIC issued yearly umbrella liability policies to Copart for the time period of October 2014 to October 2017.

1

In 2016, Robert Livingston and five other plaintiffs (the Livingston plaintiffs) filed the Underlying Suit against Copart in state court in South Carolina. The case was removed to the United States District Court for the District of South Carolina. The Livingston plaintiffs allege Copart owns over 300 acres of land in Lexington County and operates a machine salvage junkyard. The Livingston plaintiffs own properties near the Copart properties. A creek, Tom's Creek, originates on Copart's property and runs through and/or feeds wetlands on the properties of the Livingston plaintiffs. Copart stores vehicles, many of which are in a wrecked or salvaged condition, in unpaved lots on its property. The Underlying Suit alleges that "[s]ubstantially all of these vehicles" leak "gasoline, oil, hydraulic fluids, antifreeze, and other hazardous fluids and materials" into the soil. In 2013, Copart cleared trees and other vegetation from about 30 acres of land and filled it with salvaged/wrecked machinery. Copart never sought or received any National Pollutant Discharge Elimination System permits for these land disturbance activities until March of 2016, when it sought a permit for "Stormwater Management Improvements" on a little over four acres.

The Underlying Suit alleges that Copart altered the normal course of stormwater runoff over its property and now the runoff is discharged onto the Livingston plaintiffs' properties. During any significant rainfall event, water, soil, sediment, hazardous materials, and chemicals are washed from Copart's property into Tom's Creek and ultimately through the Livingston plaintiffs' properties. The pleading in the Underlying Suit alleges the sediment and hazardous materials that flow from Copart's property on the Livingston plaintiffs' property has dramatically changed the nature of their property. After each significant rain event, there is immediate damage to the aesthetics of their property in the form of cloudy water for several days. In addition, the chemical and sediment-laden water that flows from Copart's property negatively impacts the flora and fauna

2

in and around streams and ponds on their property. Scientific testing conducted on samples from "points on the periphery" of Copart's property and within the creek watershed reveal alarming levels of heavy metals and other dangerous elements. The samples show large concentrations of aluminum, lead, titanium, arsenic and copper, among other things. The Livingston plaintiffs' claims include negligence and violations of various statutes. Specifically, they assert claims against Copart for: (1) violation of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(A); (2) violation of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972 (a)(1)(B); (3) violation of the Clean Water Act, 33 U.S.C. § 1365(a)(1), by unpermitted discharge from industrial activities; (4) violation of the Clean Water Act, 33 U.S.C. § 1365(a)(1), by unpermitted land disturbance; (5) negligence and negligence per se/violation of the South Carolina Pollution Control Act; (6) negligence per se/violation of the South Carolina Stormwater Management and Sediment Reduction Act and a Lexington County stormwater management ordinance; (7) negligence per se/violation of the South Carolina Junkyard Control Act; (8) nuisance; (9) permanent injunction; and (10) trespass.

LMFIC is currently defending Copart in the Underlying Suit under a reservation of rights. In this action, Liberty Mutual seeks declarations that (1) Liberty Mutual has no duty to defend or indemnify Copart or any other person in connection with the claims asserted in the Underlying Suit and therefore has no duty to pay any portion of the defense costs incurred or paid by any person in connection with the Underlying Suit; (2) Liberty Mutual has not breached any obligation under the policies described herein by any denial of the duty to defend or pay defense costs in the Underlying Suit on behalf of Copart or any other person; and (3) LMFIC has a right to withdraw any defense it has offered or provided to Copart or any other person in connection with the

Underlying Suit. Liberty Mutual also seeks costs and attorney's fees incurred in bringing this action.

The CGL policies at issue contain two basic coverages—Coverage A for bodily injury and property damage and Coverage B for personal and advertising injury. Both coverages contain pollution exclusions, which provide the insurance does not apply to bodily injury or property damages which would not have occurred in whole or part but for "the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." The CGL policies define "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." "Waste includes materials to be recycled, reconditioned, or reclaimed."

Liberty Mutual and Copart have each moved for summary judgment. To summarize the parties' arguments, Liberty Mutual contends it is entitled to declaratory judgment as a matter of law that it has no duty to defend or indemnify Copart in the Underlying Suit. Liberty Mutual argues the pollution exclusions in the policies unambiguously preclude coverage because the sediment that flowed off Copart's property was a "pollutant." Copart contends Liberty Mutual has a duty to defend if the Underlying Suit *potentially* alleges a single claim, and Copart contends it does. According to Copart, the Underlying Complaint includes allegations that water and natural substances ran from its property and damaged the Livingston plaintiffs' property. Alternatively, Copart argues the umbrella policies impose a duty to defend because they contain an exception to the pollution exclusion for property damage arising out of the escape of fuels, lubricants, or other operating fluids from mobile equipment. Thus, Copart's motion seeks partial summary judgment on the issue of Liberty Mutual's duty to defend. In addition, Copart argues that it is premature to

4

determine that Liberty Mutual has no duty to indemnify, because that determination should be based on the evidence developed in the Underlying Suit.

## Applicable Law

To be entitled to summary judgment, a party must show there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). On cross-motions for summary judgment, the court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the non-moving party. *Baker Hughes, Inc. v. U.S.*, 943 F.3d 255, 259 (5th Cir. 2019).

We apply Texas law in this diversity action. *See Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 363 (5th Cir. 2008). In exchange for premiums paid, CGL insurers typically promise to defend and indemnify their insured for covered risks. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008). The duty to defend is distinct from, and broader than, the duty to indemnify. *Id.* An insurer may have a duty to defend, but eventually, no obligation to indemnify. *Id.* at 490–91. Texas strictly follows the "eight corners rule," meaning the duty to defend may only be determined by the facts alleged in a third-party plaintiff's petition and the coverage provided in the policy. *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 596 (5th Cir. 2011); *Zurich Am.*, 268 S.W.3d at 491. A court must focus on the factual allegations that show the origin of the damages rather than on the legal theories asserted in reviewing the underlying pleading. *Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). The court should liberally construe a plaintiff's allegations in favor of coverage and resolve all doubts about the duty to defend in favor of the insured. *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 602 (5th Cir. 2006).

An insurer must defend its insured if the third-party plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured. *Zurich Am.*, 268 S.W.3d at 490. In general, an insurer's duty to indemnify cannot be determined until after an underlying suit has been resolved. *Columbia Cas. Co. v. Ga. & Fl. RailNet, Inc.*, 542 F.3d 106, 111 (5th Cir. 2008). However, "[l]ogic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify." *American States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998).

The burden is on the insured to show that a claim against it is potentially within the scope of coverage under the policies; however if the insurer relies on the policy's exclusions it bears the burden of proving that one or more of those exclusions apply. *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). Texas courts have consistently held pollution exclusions similar to the one here to be unambiguous. *Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 646 (5th Cir. 2008). The Court finds that the exclusion in this case is unambiguous. Thus, the question before the Court is whether what allegedly caused the Livingston plaintiffs' injuries arose out of a discharge, dispersal, release or escape of pollutants. *See id.*

The Court concludes Liberty Mutual has met its burden to prove that the pollution exclusion in the CGL policies applies. Looking at the origin of the Livingston plaintiffs' damages as alleged in their live pleading, it is clear that they allege damages caused by pollutants in the water being released onto their property. The Livingston plaintiffs allege they use their property for recreational purposes, including hunting, fishing, swimming, and recreational aviation, and that use has been diminished by Copart's actions. They allege the sediment and hazardous material flowing onto their property has changed the nature of the property. Specifically, they assert immediate damage to the aesthetics of the property in the form of cloudy water for several days

6

after a significant rain event and a negative impact on the flora and fauna in and around the streams and ponds on their property. The Livingston plaintiffs point to the results of the scientific testing, which showed aluminum, lead, titanium, arsenic, and copper, and allege that these elements can have a deleterious or possibly fatal effect on the environment, humans, plants, animals, and other organisms.

Copart cites cases from other jurisdictions for the proposition that the pollution exclusion does not apply to stormwater or natural sediment in stormwater runoff. *See Nationwide Mut. Ins. Co. v. Boyd Corp.*, No. 3:09-CV-211-HEH, 2010 WL 331757 (E.D. Va. Jan. 25, 2010). But the Court finds these cases distinguishable. In the *Boyd* case, for example, the underlying plaintiffs alleged that a recreational pond and bordering wetlands on their property were being negatively impacted by nearby land development. *Id.* at *1. The insurance company argued that the plaintiffs' allegations were excluded from coverage by the pollution exclusion. *Id.* at *4. The district court found that the underlying complaint alleged damages from polluted stormwater, but also alleged damages from "water." *Id.* The complaint alleged there was damage attributable to excess water flow and stormwater runoff, which the court ruled could not be considered pollutants under the policy exclusion. *Id.* Similarly, in *Builders Mutual Insurance Co. v. Half Court Press, L.L.C.*, the underlying plaintiff alleged the developer of a residential subdivision damaged their property, which was downslope from the development and included a lake or pond. No. 6:09-cv-00046, 2010 WL 3033911, at *1 (W.D. Va. Aug. 3, 2010). The insurer sought summary judgment based on the pollution exclusion. *Id.* at *3. The complaint alleged the insured failed to maintain sufficient detention basins and erosion and sediment control measures, which caused the underlying plaintiff's property to be damaged by the continued presence of water, and other listed substances such as sediment. *Id.* The district court determined that allegations about damage from

7

the continued presence of water, were allegations about damages from water, which was not a pollutant. *Id.* at *3–4.

In this case, the Court does not find any allegations within the four corners of the underlying complaint that allege damages only from water, as opposed to polluted water. Copart cites two examples in its brief in response to Liberty Mutual's motion that it contends are analogous to the allegations in *Boyd* and *Half Court Press*. First, Copart contends the Livingston plaintiffs alleged "harm caused by stormwater." But this is not a factual allegation in their complaint; this quote is from a statement about South Carolina laws: "The essential purposes of the statutes and ordinance are to protect the environment from harm caused by stormwater as a result of improperly conducted and unpermitted land disturbance activities." Next, Copart points to the following allegation under the trespass claim: "[Copart's] actions constitute a trespass and continuing trespass by encroachment of water, sediment, and other matter onto Plaintiff's property." But other allegations under this claim and throughout the complaint make clear the origin of damages was "the flow of stormwater laden with soil, sediment, and harmful chemicals" onto the Livingston plaintiffs' property. The complaint cannot be read to allege damage from non-polluted water alone. The Court finds further support for this conclusion in the fact that the actual harm the Livingston plaintiffs allege is cloudy water and damage to flora and fauna from the water laden with chemicals and sediment.

Turning to the coverage provided by the umbrella policies, Copart contends Liberty Mutual has a duty to defend under the umbrella policies. Copart argues the umbrella policies contain an exception to the pollution exclusion for property damage arising out of "the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of 'mobile equipment.'" Copart contends the

8

underlying complaint includes allegations related to damage caused by fuel and fluids leaking from industrial vehicles that trigger Liberty Mutual's duty to defend under this mobile equipment exception.

Among other things, Liberty Mutual argues it is required to defend under the umbrella policies only if the retained limit, $1,000,000 here, has been exhausted by payment of damages covered by the pollution exclusion endorsement. The Underlying Suit is pending and no damages have been paid. Copart does not disagree that the umbrella policies require the fulfillment of a retained limit before a duty to defend is triggered. Under these circumstances, the Court is unable to find there is a duty to defend under the umbrella policies. Because Liberty Mutual has no duty to defend the Underlying Suit, it follows that it has no duty to indemnify. *See American States*, 133 F.3d at 368.

In conclusion, the Court grants Liberty Mutual's motion for summary judgment and denies Copart's motion for partial summary judgment. Liberty Mutual may seek attorney's fees by filing a motion under Rule 54(d).

**SO ORDERED.**

Signed August 20, 2021.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE